## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 17-21096 |
| | ) | Chapter 7 |
| SYLWESTER WIEJATA AND ANNA | ) | |
| WIEJATA, | ) | Hon. Jacqueline P. Cox |
| | ) | |
| Debtors. | ) | Hearing Date:  August 16, 2018 |
| | ) | Hearing Time: 9:30 a.m. |

## COVER SHEET FOR FIRST AND FINAL APPLICATION FOR
## COMPENSATION AND EXPENSE REIMBURSEMENT OF SEYFARTH SHAW LLP
## AS COUNSEL TO CHAPTER 7 TRUSTEE, GUS A. PALOIAN

Name of Applicant:                          Seyfarth Shaw LLP

Authorized to Provide
Professional Services to:                   Chapter 7 Trustee, Gus A. Paloian

Date of Retention:                          December 19, 2017, retroactive to September 1, 2017

Period for which Compensation               September 1, 2017 through the close of the case
and Reimbursement is Sought:

Amount of Final Compensation
Sought:                                     $5,001.00

Amount of Final Expense
Reimbursement Sought:                       $    8.88

This is a:     X   Final        ____   Interim Application.

Prior Applications:  None

Dated:  July 13, 2018                        Respectfully submitted,

                                            GUS A. PALOIAN, not individually or
                                            personally, but solely in his capacity as the
                                            Chapter 7 Trustee of the Debtors' Estate,

                                            By:/s/ Gus A. Paloian
                                               Gus A. Paloian (06188186)
                                               Bret M. Harper (6299968)
                                               SEYFARTH SHAW LLP
                                               233 South Wacker Drive
                                               Suite 8000
                                               Chicago, Illinois 60606
                                               Telephone:  (312) 460-5000
                                               Facsimile:  (312) 460-7000

146750002v.11

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 17-21096 |
| | ) | Chapter 7 |
| SYLWESTER WIEJATA AND ANNA | ) | |
| WIEJATA | ) | Hon. Jacqueline P. Cox |
| | ) | |
| Debtors. | ) | Hearing Date:  August 16, 2018 |
| | ) | Hearing Time: 9:30 a.m. |

**FIRST AND FINAL APPLICATION FOR COMPENSATION AND EXPENSE
REIMBURSEMENT OF SEYFARTH SHAW LLP AS COUNSEL
TO CHAPTER 7 TRUSTEE GUS A. PALOIAN
<u>FROM SEPTEMBER 1, 2017 THROUGH THE CLOSE OF THE CASE</u>**

Pursuant to Sections 105(a) and 330 of the United States Bankruptcy Code, Seyfarth

Shaw LLP ("<u>Seyfarth</u>"), as counsel to Gus A. Paloian, not individually or personally, but solely

in his capacity as the duly-appointed Chapter 7 trustee (the "<u>Trustee</u>") of the bankruptcy estate

(the "<u>Estate</u>") of the above-captioned Debtors (the "<u>Debtors</u>"), hereby submits its First and Final

Application for Compensation and Expense Reimbursement (the "<u>Application</u>") for legal

services performed, and expenses incurred, during the period of September 1, 2017, through the

close of the case (the "<u>Application Period</u>").  In support of this Application, Seyfarth respectfully

represents, as follows:

## I.  INTRODUCTION

1.      Seyfarth makes this Application pursuant to:  (A) Sections 330, 503(a) and (b),  and

507(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101 through 1330, as amended (the

"<u>Bankruptcy Code</u>");  (B) Rule 2016 of the Federal Rules (the "<u>Rules</u>") of Bankruptcy Procedure;  (C)

certain applicable provisions of the Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed under 11 U.S.C. § 330, as adopted by the Office of the United States

Trustee;  (D) Rule 5082-1 of the Local Bankruptcy Rules (the "<u>Local Rules</u>") for the United States

Bankruptcy Court for the Northern District of Illinois (the "<u>Court</u>");  (E) that certain Order of the Court,

1

dated December 19, 2017, authorizing Seyfarth's retention as counsel to the Trustee effective as of

September 1, 2017 (the "Seyfarth Retention Order");  and (F) other applicable case law discussed herein

(collectively, the "Authorities for Relief").  In this regard, Seyfarth has made every reasonable effort to

comply with the Authorities for Relief.

2.      In making this Application, Seyfarth respectfully seeks an Order of this Court awarding:

(1) final allowance of compensation in the amount of $5,001.00 for professional services rendered by

Seyfarth on behalf of the Trustee during the Application Period;  and (2) final reimbursement of actual

and necessary expenses in the amount of $8.88 incurred by Seyfarth in rendering such professional

services to the Trustee in the Case.

## II.  JURISDICTION

3.      This Court has jurisdiction over this Application pursuant to 28 U.S.C. §§ 157 and 1334.

This matter is before the Court pursuant to 28 U.S.C. § 157 and Internal Operating Procedure 15(a) of the

United States District Court for the Northern District of Illinois.  Venue of this Case and this Application

is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  Consideration of this Application is a

core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (b)(2)(A), (M), and/or (O).  The predicates for the

relief requested herein are 11 U.S.C. §§ 105(a), 330, and 331.

## III.  BACKGROUND

### A.      Case Background

4.      On July 14, 2107, the Debtors filed a voluntary petition for relief under Chapter 7 of the

United States Bankruptcy Code (the "Bankruptcy Code"), thereby commencing the above-captioned

Case.

5.      Thereafter, Gus A. Paloian was appointed as Chapter 7 Trustee for the Estate.

6.      On September 14, 2017, the Trustee filed an Initial Report of Assets with the Court.

7.      Seyfarth was retained as counsel for the Trustee pursuant to the Seyfarth Retention Order

dated September 1, 2017.  A copy of the Seyfarth Retention Order is attached hereto as **Exhibit 1.**

2

**B.**     **Summary of Services Rendered by Seyfarth to the Trustee**

8.       This is Seyfarth's First and Final Application for compensation and expense reimbursement in the Case.

9.       Seyfarth has neither previously received nor been awarded any compensation of fees, or reimbursement of expenses incurred, related to the Case during the Application Period.

10.       In accordance with Section 504 of the Bankruptcy Code, Rule 2016, and the U.S. Trustee Guidelines, no payments have heretofore been made, promised to, or applied by Seyfarth for services rendered or to be rendered or expenses incurred in any capacity whatsoever in connection with the Case. Moreover, no agreement or understanding exists between Seyfarth and any other entity for a division of compensation or expense reimbursement to be received herein or in connection with the Case, other than as permitted under the Bankruptcy Code and Rules.

11.       The Fees requested by Seyfarth for legal services rendered to the Trustee during the Application Period aggregate $5,001.00.

12.       All of the Fees for which Seyfarth requests final allowance and payment of compensation relate to the Application Period and were rendered in connection with the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee.  During the Application Period, Seyfarth has rendered 13.20 hours of professional services.

13.       A breakdown of the Fees by each Seyfarth professional; each such professional's title, hourly rate, and total hours expended in providing legal services; and the value attributable to such legal services is, as follows:

| PROFESSIONAL | TITLE | 2017 HOURLY RATES | 2018 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | $705.00 | 1.20 | $838.00 |
| Bret Harper | Associate | $355.00 | $405.00 | 3.80 | $1,514.00 |

3

| Jennifer M. McManus | Paralegal | $330.00 | $330.00 | 8.20 | $2,649.00 |
|---|---|---|---|---|---|
| **TOTAL:** | | | | **13.20** | **$5,001.00** |

14.     During the Application Period, Seyfarth made every reasonable effort to have services that it rendered to the Trustee performed by those qualified professionals charging the lowest hourly rates consistent with the level of service, experience, and efficiency required of a given task.

15.     All of the compensation for which Seyfarth requests allowance and payment, and all of the expenses for which Seyfarth requests reimbursement, in this Application relate to the discharge of Seyfarth services, as requested by the Trustee, during the Application Period.

16.     Seyfarth respectfully submits that its services rendered to the Trustee and expenses incurred during the Application Period have, in all respects, been reasonable, necessary, and beneficial to the Estate, as further discussed herein.

### C.     Time and Expense Records

17.     Seyfarth maintains written records of the time expended by its professionals.  These time records are maintained:  (i) contemporaneously with the rendition of services by each Seyfarth professional, and (ii) separately from those of the Trustee, in accordance with established procedures within this District.

18.     Such records for the Case, copies of which are grouped and attached hereto as **Exhibit 2** and which are incorporated herein by reference, set forth in detail:  (i) the services which Seyfarth rendered on behalf of the Trustee, (ii) the dates upon which such services were rendered, and (iii) the amount of time spent on the services in one-tenth of one hour increments.

19.     Seyfarth also maintains records of all actual and necessary out-of-pocket expenses incurred in connection with rendering services to the Trustee.  A complete listing of the Expenses and the amounts for which reimbursement is sought is included in attached **Exhibit 2** and incorporated herein by reference.

4

D.    **Breakdown of Fees by Category of Services Rendered**

25.    For the Court's convenience, Seyfarth has categorized its services to the Trustee

during the Application Period into three (3) categories, as follows:  (i) Case Administration;  (ii)

Sale of Assets; and (iii) Fee Applications (Attorney and Trustee).

## CASE ADMINISTRATION (5.20 HOURS VALUED AT $1,817.50)

20.    During the Application Period, Seyfarth performed 5.20 hours of services having a value

of $1,817.50 on behalf of the Trustee on matters related to case administration including:

A.    Conferences, teleconferences, and/or correspondence regarding assets and
liabilities of the Estate, generally;

B.    Investigating assets and case strategy and preparing case reports regarding status
and strategy; and

C.    Preparing the application to retain counsel.

21.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2017 HOURLY RATES | 2018 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | $705.00 | .40 | $278..00 |
| Bret Harper | Associate | $355.00 | $405.00 | .50 | $177.50 |
| Jennifer M. McManus | Paralegal | $330.00 | $330.00 | 4.30 | $1,362.00 |
| **TOTAL:** | | | | **5.20** | **$1,817.50** |

## SALE OF ASSETS
## (5.40 HOURS VALUED AT $2,325.50)

22.    During the Application Period, Seyfarth performed 5.40 hours of services, having  a

value of $2,325.50 on behalf of the Trustee on matters related to settling claims of the Estate, including:

5

A.    Conferences, teleconferences, and/or correspondence regarding negotiating the liquidation of Debtors' brokerage account funds and sale of Debtors' photo equipment (the "Property");

B.    Preparation of sale motion; and

C.    Effect/finalize sale of the Property.

23.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2017 HOURLY RATES | 2018 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Gus A. Paloian | Partner | $695.00 | N/A | 2.00 | $1,390.00 |
| Bret Harper | Associate | $355.00 | N/A | 2.80 | $994.00 |
| Jennifer M. McManus | Paralegal | $330.00 | $330.00 | .30 | $94.50 |
| **TOTAL:** | | | | **5.10** | **$2,478.50** |

## FEE APPLICATIONS (2.60 HOURS VALUED AT $858.00)

24.    During the Application Period, Seyfarth spent 2.60 hours, worth a value of $858.00, preparing (i) Seyfarth Shaw LLP's first and final fee application, and (ii) Chapter 7 Trustee Gus A. Paloian's first and final application.

25.    A breakdown of the professionals providing services in this category is as follows:

| PROFESSIONAL | TITLE | 2017 HOURLY RATES | 2018 HOURLY RATES | TOTAL HOURS | VALUE |
|---|---|---|---|---|---|
| Jennifer M. McManus | Paralegal | N/A | $330.00 | 2.60 | $858.00 |
| **TOTAL:** | | | | **2.60** | **$858.00** |

6

**Incurred Expenses**

26.     As set forth in attached **Exhibit 2**, Seyfarth advanced $8.88 in Expenses on behalf of the Estate during the Application Period.

27.     A portion of the Expenses consists of in-house photocopying charges, which Seyfarth has voluntarily reduced to $0.10 per page.

28.     Additionally, Seyfarth will advance out-of-pocket expenses on behalf of the Estate for service of the final report on creditors who filed claims in the Estate.

29.     The expenses for which Seyfarth seeks reimbursement are representative and typical of the types of expenses that Seyfarth ordinarily and customarily charges its non-bankruptcy clients.  Such expenses are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

30.     Instead, Seyfarth generally adheres to the so-called "user fee" billing system for out-of-pocket expenses—that is, Seyfarth charges expenses to the particular clients who use them, in this instance the Estate, at cost.

## IV.  RELIEF REQUESTED

31.     Seyfarth respectfully requests that the Court allow and award it on a final basis the Fees, consisting of $5,001.00 for additional professional services rendered to the Trustee, and the Expenses, in the amount of $8.88 incurred in relation to such services (collectively, the "Requested Fees and Expenses").

32.     A proposed order providing for the requested relief is attached hereto for the Court's consideration.

## V.  BASIS FOR THE REQUESTED RELIEF

**A.**     **Compensation Standards**

33.     Pursuant to Section 331 of the Bankruptcy Code, a professional person employed under Section 327 may generally apply for First and Final compensation from a bankruptcy court.  See 11

7

U.S.C. § 331.  Under Section 330(a)(1)(A), the Court may then award the professional person "reasonable compensation for actual, necessary services rendered[.]" 11 U.S.C. § 330(a)(1)(A).

34.      In determining the "extent and value of compensation," this Court has endorsed and applied the "'lodestar' approach—multiplying the number of actual and necessary hours reasonably expended by a reasonable hourly rate[.]"  *In re Wildman*, 72 B.R. 700, 712 (Bankr. N.D. Ill. 1987) (Schmetterer, J.);  accord *In re UNR Indus., Inc.*, 986 F.2d 207, 210-11 (7th Cir. 1993) (lodestar approach provides fair compensation under Section 330);  see also City of Burlington v. Dague, 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449 (1992) ("The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence.  We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee[.]").

35.      To arrive at an attorney's reasonable hourly rate, the Seventh Circuit has "emphasize[d] that section 330 . . . *requires* lawyers in bankruptcy matters to receive the same compensation as they would earn in performing similar services outside the context of bankruptcy."[1] *In re UNR Indus., Inc.*, 986 F.2d at 210 (emphasis added).  The statutory aim is twofold:  (A) "that attorneys be reasonably compensated," and (B) "that future attorneys not be deterred from taking bankruptcy cases due to a failure to pay adequate compensation."  UNR Indus., Inc., supra;  see also *In re Farley, Inc.*, 156 B.R. at 210 ("The purpose of § 330 was to encourage bankruptcy practitioners not to leave the field in favor of more lucrative areas of the law.") (citing legislative history to Section 330).

36.      As a cornerstone of this market rate approach, the Seventh Circuit has repeatedly "stressed that the best measure of the cost of an attorney's time is what that attorney could earn from paying clients"—that is, the attorney's "standard hourly rate."  Gusman v. Unisys Corp., 986 F.2d 1146, 1150 (7th Cir. 1993);  see Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 707 (7th Cir. 2001) ("The attorney is entitled to his market rate and not some 'medieval just price' determined by the

---

[1] "In section 330 and its legislative history Congress expressed its intent that compensation in bankruptcy matters be commensurate with the fees awarded for comparable services in non-bankruptcy cases."  In re UNR Indus., Inc., 986 F.2d at 208-09;  see In re Farley, Inc., 156 B.R. 203, 210 (Bankr. N.D. Ill. 1993) (Schmetterer, J.) (quoting same).

8

court.") (quoting <u>Steinlauf v. Continental Ill. Corp.</u> (<u>In re</u> <u>Continental Ill. Sec. Litig.</u>), 962 F.2d 566, 568 (7th Cir. 1992)).

37.     Therefore, the Seventh Circuit has mandated that an "attorney's actual billing rate . . . is considered to be the presumptive market rate." <u>Small</u>, 264 F.3d at 707.  Moreover, "[t]he lawyer's regular rate is *strongly presumed* to be the market rate for his or her services." <u>Moriarty v. Svec</u>, 233 F.3d 955, 965 (7th Cir. 2000) (emphasis added), <u>cert. denied</u>, 532 U.S. 1066, 121 S. Ct. 2216, 150 L. Ed. 2d 209 (2001); <u>see</u> <u>Moriarty v. Svec</u>, 429 F.3d 710, 718 (7th Cir. 2005) (quoting same);  <u>see also</u> <u>Central States, S.E. & S.W. Areas Pension Fund v. Central Cartage Co.</u>, 76 F.3d 114, 116 (7th Cir.) ("[A] lawyer's regular hourly fee, one counsel would charge 'to the meanest villain', *is* the market rate for that lawyer's services.") (emphasis added and quoting <u>Barrow v. Falck</u>, 977 F.2d 1100, 1106 (7th Cir. 1992)), <u>cert. denied sub nom.</u> <u>Mason & Dixon Lines v. Central States, S.E. & S.W. Areas Pension Fund</u>, 519 U.S. 811, 117 S. Ct. 56, 136 L. Ed. 2d 19 (1996).

38.     Under this principle, "lawyers who fetch above-average rates are presumptively entitled to them, rather than to some rate devised by the court." <u>Gusman</u>, 986 F.2d at 1150;  <u>accord</u> <u>In re</u> <u>Spanjer Bros., Inc.</u>, 191 B.R. 738, 755 (Bankr. N.D. Ill. 1996) (Squires, J.) ("Generally, so long as the rates being charged are the applicant's normal rates charged in bankruptcy and non-bankruptcy matters alike, they will be afforded a presumption of reasonableness.").

39.     "Only if an attorney is unable to provide evidence of her actual billing rates should a [ ] court look to other evidence, including 'rates similar experienced attorneys in the community charge paying clients for similar work.'" <u>Mathur v. Board of Trs. of S. Ill. Univ.</u>, 317 F.3d 738, 743 (7th Cir. 2003) (quoting <u>Spegon v. Catholic Bishop of Chicago</u>, 175 F.3d 544, 555 (7th Cir. 1999));  <u>see also</u> <u>Gusman</u>, 986 F.2d at 1151 ("the ability to identify a different average rate in the community" is an impermissible reason to depart from an attorney's billing rate).

40.     Accordingly, because Seyfarth bills the vast majority of its time at a set rate for paying clients and spends only a very small percentage of time on cases covered by fee-shifting statutes, "there is

9

46750002v.1

a strong presumption that such counsel could have billed out remaining time at the rate normally charged." _In re_ Farley, Inc., 156 B.R. at 211.

41.    Additionally, under generally accepted standards, if the services of an attorney employed under Section 327 are reasonably likely to benefit a debtor's estate, they should be compensable.  See Andrews & Kurth L.L.P. v. Family Snacks, Inc. (_In re_ Pro-Snax Distributors, Inc.), 157 F.3d 414, 421 (5th Cir. 1998);  _In re_ Ames Dep't Stores, Inc., 76 F.3d 66, 71 (2d Cir. 1996);  2 Lawrence P. King, Collier on Bankruptcy ¶ 330.04 at 330-43 (15th ed. rev. 1999);  cf. 11 U.S.C. § 330(a)(4)(A)(ii)(I).  In this same context, "[n]ecessary services are those that aid in fulfilling its duties under the Code." _In re_ Ben Franklin Retail Store, Inc., 227 B.R. 268, 270 (Bankr. N.D. Ill. 1998) (Barliant, J.).

42.    Thus, the determination of benefit to the Estate is not constrained to a dollar-for-dollar measurement, such that each dollar's worth of legal services must bring a cash dollar into the Estate in order to justify equivalent compensation to counsel.  See _In re_ Lifschultz Fast Freight, Inc., 140 B.R. 482, 488 (Bankr. N.D. Ill. 1992) (Barliant, J.) ("Necessary services have always included services that aid in the administration of the case and help the client fulfill duties under bankruptcy law, whether or not those services result in a monetary benefit to the estate.");  accord _In re_ Rite Way Reproductions, Inc., 1998 Bankr. LEXIS 1080, at *6-*7 (Bankr. N.D. Ill. Aug. 27, 1998) (Squires, J.) (concurring and further observing that "factors other than the economic impact on the estate of actions taken should be considered in the 'benefit to the estate' analysis"); _In re_ Caribou P'ship III, 152 B.R. 733, 742 (Bankr. N.D. Ind. 1993) (same); see, e.g., Ben Franklin Retail Store, Inc., supra ("[A] trustee (or First and Final trustee) performs necessary services when he carries out the duties set forth in § 704 of the Code."); JMP-Newcor Int'l, Inc. v. Seyfarth, Shaw, Fairweather & Geraldson (_In re_ JMP-Newcor Int'l, Inc.), 1998 U.S. Dist. LEXIS 987, at *13 (N.D. Ill. Jan. 23, 1998) (affirming bankruptcy court's award of fees to firm for advising committee in reasonable way and in good faith despite lack of direct monetary benefit to debtor and estate).

43.    Instead, other factors, such as "whether the services rendered promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the

Bankruptcy Code and Rules for the orderly and prompt disposition of bankruptcy case and related adversary proceedings," also support awards of compensation. *In re* Spanjer Bros., Inc., 191 B.R. at 748.

44.     As previously stated, the legal services for which Seyfarth requests allowance and payment of compensation relate to the Application Period, and were rendered in connection with the Case and in the discharge of Seyfarth's professional responsibilities as counsel to the Trustee during that time.

45.     Seyfarth respectfully submits that such legal services have, in all respects, been reasonable, necessary, and beneficial to the Estate.  In this connection, these services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the matters which they concerned.

46.     Further, they promoted the bankruptcy process and the administration of the Estate and supported the Trustee in fulfilling his statutory duties, all in accordance with the Bankruptcy Code and Rules.

47.     For purposes of this Application, Seyfarth has computed the Fees on the basis of its discounted hourly rates applicable to the performance of bankruptcy legal services unrelated to the Case at the time that such services were rendered.

48.     Seyfarth's average hourly billing rate for its attorneys—that is, its "lodestar" rate—during the Application Period was $470.40.

49.     During the Application Period, Seyfarth's discounted hourly billing rates for professionals providing services in the Case ranged from:  (A) $355.00 to $705.00 for attorneys, and (B) $330.00 for paralegals or para-professionals.

50.     In all these respects, the compensation which Seyfarth has requested herein is reasonable based upon the customary compensation charged by comparably-skilled practitioners in either non-bankruptcy or bankruptcy cases.

51.     Moreover, it is less than the fees which Seyfarth would have received for providing legal services to its non-bankruptcy clients, and thus represents even less than its lost opportunity costs for such

non-bankruptcy services because Seyfarth's acceptance of employment by the Trustee in the Case

precluded such employment.

52.    In rendering legal services to the Trustee, and in making this Application, Seyfarth

respectfully submits that it has exercised its good faith billing judgment, and has not sought compensation

for "excessive, redundant, or otherwise unnecessary" time.  Hensley v. Eckerhart, 461 U.S. 424, 434, 103

S. Ct. 1933, 1939-40, 76 L. Ed. 2d 40 (1983).

**B.    Expense Reimbursement Standards**

53.    With respect to reimbursing expenses, the Court may award a professional person

"reimbursement for actual, necessary expenses."  11 U.S.C. § 330(a)(1)(B).

54.    "An expense is necessary if it was incurred because it was required to accomplish the

proper representation of the client."  In re Spanjer Bros., Inc., 191 B.R. at 749;  see In re Wildman, 72

B.R. at 731.

55.    In this connection, Seyfarth has requested reimbursement only for actual and necessary

expenses incurred on the Trustee's behalf.  Seyfarth respectfully submits that these expenses were

incurred because they were required to accomplish the proper representation of the Trustee and the

furtherance of the Estate's interests in the Case.  As previously indicated, Seyfarth voluntarily reduced

and limited its costs for photocopy expenses.

56.    Seyfarth submits that the Expenses are reimbursable and do not constitute "overhead,"

which the Court discussed and described, as follows:

57.    Expenses which are overhead are not compensable because they are not built into the

normal hourly rate charged by the billing professional.  Convent Guardian, 103 Bankr. at 939;  Wildman,

72 Bankr. at 731.  Overhead expenses include "all continuous administrative or general costs or expenses

incident to the operation of the firm which cannot be attributed to a particular client or cost."  In re

Thacker, 48 Bankr. 161, 164 (Bankr. N.D. Ill. 1985) (quoting Jensen-Farley Pictures, 47 Bankr. at 584)[2].

---

[2] In re GSB Liquidating Corp., 1995 Bankr. LEXIS 1245, at *41 (Bankr. N.D. Ill. Aug. 21, 1995)
(Squires, J.);  see In re Adventist Living Ctrs., Inc., 137 B.R. 701, 719 (Bankr. N.D. Ill. 1991) (Sonderby,

12

58.    In contrast, Seyfarth charges for its out-of-pocket expenses only, including the incurred Expenses, to the particular clients who use them—in this instance, the Estate.  As previously discussed, the incurred Expenses included herein are neither taken into consideration in determining, nor built as "overhead" into, Seyfarth's hourly rates.

59.    In seeking reimbursement for the Expenses herein, Seyfarth has made every attempt to fully comply with these dictates.

## VI.  **NO PRIOR REQUEST**

60.    No prior request for the relief requested by this Application has been made to this Court or to any other court.

WHEREFORE Seyfarth Shaw LLP respectfully requests that the Court enter an Order:

A.    Allowing Seyfarth final compensation in the total amount of $5,001.00;

B.    Allowing Seyfarth final reimbursement of expenses in the amount of $8.88;

C.    Authorizing the Trustee to make payment of the requested Fees and Expenses to Seyfarth from funds on hand in the Estate as part of his final distribution in the case; and

---

J.) ("Expenses which are overhead and which are included in the hourly rate are not compensable."); see also 2 Lawrence P. King, Collier on Bankruptcy ¶ 330.05 at 3-330 (15th ed. rev. LEXIS 2006) ("Nonreimbursable overhead has been defined as regular administrative and general expenses incident to the operation of a business that cannot be attributed to a particular client or cost."); see, e.g., Stroock & Stroock & Lavan v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 127 F.3d 1398, 1402 (11th Cir. 1997) ("We accept that true 'overhead' costs—the ordinary operating costs of a firm, *such as rent, heat, and the like*, that cannot readily be attributed to a particular case—are not separately compensable as reimbursable expenses.") (emphasis added)

13

    D.      Granting such other and further relief as this Court deems just and appropriate.

Dated:  July 13, 2018               Respectfully submitted,

GUS A. PALOIAN, not individually or
personally, but solely in his capacity as the
Chapter 7 Trustee of  the Debtors' Estate,

By:/s/ Gus A. Paloian                    
    Gus A. Paloian (06188186)
    Bret M. Harper (6299968)
    SEYFARTH SHAW LLP
    233 South Wacker Drive, Suite 8000
    Chicago, Illinois 60606
    Telephone:  (312) 460-5000
    Facsimile:  (312) 460-7000

46750002v.1

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re: | ) | BK No.:   17-21096 |
| | ) | |
| SYLWESTER WIEJATA and ANNA | ) | Chapter:  7 |
| WIEJATA | ) | Honorable Jacqueline Cox |
| | ) | |
| | ) | |
| Debtor(s) | ) | |

**ORDER AUTHORIZING CHAPTER 7 TRUSTEE'S APPLICATION TO
EMPLOY SEYFARTH SHAW LLP AS HIS COUNSEL RETROACTIVELY**

This matter having been presented to the Court on the Chapter 7 Trustee's Application to Employ Seyfarth Shaw LLP ("Seyfarth") As His Counsel Retroactively (the "Application"), filed on November 3, 2017 by Gus A. Paloian, not individually, but solely as chapter 7 trustee of the bankruptcy estate of Sylwester Wiejata and Anna Wiejata (the "Trustee"). The Application, upon the accompanying Affidavit of Bret M. Harper, requests entry of an order authorizing the employment of Seyfarth to represent the Trustee in the above-referenced case.

Having considered the Motion, this Court finds and concludes that: (i) this Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334 and Internal Operating Procedure 15 of the United States District Court for the Northern District of Illinois; (ii) venue is proper in this District under 28 U.S.C. § 1409(a); (iii) this proceeding is a core proceeding under 28 U.S.C. § 157(b)(2); and (iv) due and proper notice of the Motion has been given and no other or further notice is required. In light of the foregoing,

IT IS ORDERED THAT:

1. The Application is granted.

2. The notice of the Application as given is deemed sufficient and proper.

3. The Trustee is hereby authorized, pursuant to sections 327 and 328 of the Bankruptcy Code, to employ Seyfarth Shaw LLP as his counsel, retroactive to September 1, 2017, as set forth in the Application.

4. The Court shall retain jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

Enter:

J. Co Jacqueline P. Cox

Dated:  12-19-17

United States Bankruptcy Judge

**Prepared by:**
Bret M. Harper (6299968)

Rev: 20151029_bko

# EXHIBIT 2

## CASE ADMINISTRATION

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 09/15/17 | Open case. | J. McManus | 0.10 | 31.50 |
| 10/09/17 | Prepare service list (.50); revise Application to Retain Seyfarth (.40); revise Harper Affidavit (.40). | J. McManus | 1.30 | 409.50 |
| 12/04/17 | Communications with J. McManus regarding asset report and recovery of funds from debtor (.20); communications with Debtor's counsel regarding turnover of proceeds of trading account and auto purchase (.20). | G. Paloian | 0.40 | 278.00 |
| 12/04/17 | Revise service list (.40); prepare Harper Affidavit (.80); revise retention application (.40). | J. McManus | 1.60 | 504.00 |
| 12/05/17 | Finalize Application to Retain Seyfarth in preparation for filing (.30); revise Harper Affidavit (.20); prepare proposed Order (.10); effect filing of Application (.20). | J. McManus | .80 | 252.00 |
| 12/19/17 | Appear at hearing to retain Seyfarth. | B. Harper | 0.50 | 177.50 |
| 02/06/18 | Prepare case status report. | J. McManus | 0.20 | 66.00 |
| 02/14/18 | Revise/update case status report regarding 4th quarter of 2017 (.10); prepare status report for 1st quarter 2018 (.10). | J. McManus | 0.20 | 66.00 |
| 02/28/18 | Review case status with G. Paloian. | J. McManus | 0.10 | 33.00 |
| | **TOTAL** | | **5.20** | **$1,817.50** |

## SALE OF ASSETS

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 12/19/17 | Communications with Debtor's counsel regarding turnover and purchase. | G. Paloian | 0.20 | 139.00 |
| 12/28/17 | Communications with counsel regarding turnover of stock funds and equipment proceeds (.20). | G. Paloian | 0.20 | 139.00 |
| 01/22/18 | Attend to motion to sell assets (.20). | G. Paloian | 0.20 | 141.00 |
| 01/24/18 | Communications with B. Harper regarding motion to authorize sale of equipment (.20). | G. Paloian | 0.20 | 141.00 |
| 01/25/18 | Prepare motion to sell photographic equipment (2.60); prepare proposed order regarding same (.20) | B. Harper | 2.80 | 1,134.00 |
| 01/25/18 | Email communications with B. Zaczek regarding photo equipment valuation (.10); revise motion to sell equipment in preparation for filing (.30). | J. McManus | 0.40 | 132.00 |
| 01/26/18 | Revise service list (.20); prepare proposed Order (.20); assemble sale motion for filing with the Court (.30); effect filing of motion (.20). | J. McManus | 0.90 | 297.00 |
| 02/20/18 | Appear at hearing on motion to sell estate assets (.50). | B. Harper | 0.50 | 202.50 |
| | **TOTAL** | | **5.40** | **$2,325.50** |

### FEE APPLICATIONS

| Date | Description | Timekeeper | Hours | Value |
|------|-------------|------------|-------|-------|
| 05/09/18 | Revise Seyfarth fee application. | J. McManus | 0.60 | 198.00 |
| 05/22/18 | Prepare Trustee Fee Application. | J. McManus | 0.80 | 264.00 |
| 05/22/18 | Prepare Trustee fee application. | J. McManus | 0.50 | 165.00 |
| 05/24/18 | Prepare Seyfarth fee application. | J. McManus | 0.70 | 231.00 |
| | **TOTAL** | | **2.60** | **$858.00** |

**Total Fees**      **$5,001.50**

| Description | Hours | Value |
|-------------|-------|-------|
| Case Administration | 5.20 | $1,817.50 |
| Sale of Assets | 5.40 | $2,325.50 |
| Fee Applications | 2.60 | $858.00 |
| **TOTAL** | **13.20** | **$5,001.00** |

**Copying/Mailing**
Estimated copying charge of NFR = 4 pages x .10/pp x 8 = $2.10      3.20
Estimated mailing charge of NFR = 8 x .71      5.68

**Total Disbursements**      **$8.88**